OPINION
{¶ 1} Appellant Carol Glagola appeals the decision of the Stark County Court of Common Pleas that found her guilty of reckless homicide with a firearm specification. The following facts give rise to this appeal.
 {¶ 2} On July 27, 2002, appellant fatally shot her paraplegic live-in boyfriend, David Benna, with a .357 caliber Smith Wesson revolver. Benna and appellant lived together with appellant's thirteen-year-old son, Ryan, in Brewster. On the day in question, Benna and appellant had been arguing about a prospective trip to Florida and the absence of his Smith Wesson revolver. Appellant had removed the gun from the residence and placed it in their motor vehicle.
 {¶ 3} At some point after 9:30 p.m., appellant went outside to retrieve the gun from the vehicle. The fatal shooting occurred while Benna was laying on the floor in a sleeping bag. Following the shooting, appellant placed the gun on top of a trash can and called 911. Brewster Police Officers, Denise Rossiter and Steven Sloan, responded to the call. Upon entering the residence, both officers noticed the smell of alcohol on appellant. Appellant informed the officers that she shot Benna.
 {¶ 4} The officers arrested appellant and transported her to the Massillon City Jail. On the way to the jail, appellant talked continuously. Appellant's statements were recorded on an in-car video tape machine. While in the cruiser, appellant told Officer Rossiter that the shooting was not a big deal. Appellant also stated that, "I just did it like a fuck-off thing." Appellant continued with her comments. At one point she said, "Yeah, I shot him what's the BFD, what's the problem?" Appellant also inquired about the whereabouts of the gun and asked, "Where's the .357 I shot the asshole with?"
 {¶ 5} Benna died the following day from the gunshot wound. Upon hearing that Benna died, appellant continued to act normal as if nothing had happened. On the day following the shooting, appellant told the police that she and Benna had not been arguing. Instead, appellant claimed Benna forgot the gun in the vehicle and she went to retrieve it for him. Appellant stated the shooting occurred when she flipped the gun as she handed it to Benna. The gun discharged and the bullet struck Benna in the abdomen.
 {¶ 6} Appellant also spoke with Dave Sereno, a reporter with The Canton Repository. Appellant informed Sereno that the shooting was an accident and the gun fired as she was handing it to Benna. Appellant also informed Sereno that she had not been arguing with Benna and that she had a couple of drinks prior to the shooting but was not drunk.
 {¶ 7} On September 10, 2002, the Stark County Grand Jury indicted appellant for one count of murder with a firearm specification. Appellant entered a plea of not guilty and this matter proceeded to trial on December 16, 2002. At trial, appellant claimed the shooting was an accident. Appellant's son, Ryan, testified that the shooting occurred when appellant pulled the gun away from Benna, in order to determine whether it was loaded, and Benna pulled on the barrel of the gun. Ryan estimated that appellant was approximately three feet from Benna when the gun fired.
 {¶ 8} Criminalist Michael Short, of the Stark County Crime Lab, testified about a variety of tests he performed on the evidence in this case. Short determined that Benna was more than four and one-half feet from the barrel of the gun when it fired due to the lack of gunshot residue on Benna's clothing. At the close of trial, pursuant to the state's request, the court instructed the jury on the lesser offense of reckless homicide.
 {¶ 9} Following deliberations, the jury returned its verdict finding appellant guilty of reckless homicide and the attendant firearm specification. The trial court sentenced appellant to a prison term of three years on the reckless homicide conviction along with the three-year mandatory consecutive sentence for the firearm specification.
 {¶ 10} Appellant timely filed her notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 11} "I. It Was Plain Error For The Trial Court To Fail To Instruct The Jury On The Lesser Offense Of Negligent Homicide And/or The Defense Of Accident.
 {¶ 12} "II. Appellant Was Denied Effective Assistance Of Counsel Due To Trial Counsel's Failure To Request In Writing And/or Failing To Object When The Trial Court Failed To Instruct The Jury On The Lesser Offense Of Negligent Homicide And The Defense Of Accident.
 {¶ 13} "III. Appellant's Conviction For Reckless Homicide With A Gun Specification Was Against The Manifest Weight And Sufficiency Of The Evidence."
 I {¶ 14} In her First Assignment of Error, appellant maintains plain error occurred when the trial court failed to instruct the jury on the lesser offense of negligent homicide and/or the defense of accident. We disagree.
 {¶ 15} The record indicates that defense counsel did not request an instruction on negligent homicide nor did counsel request an instruction on the defense of accident. Defense counsel also did not object to the trial court's failure to instruct on negligent homicide or the defense of accident. Crim.R. 30(A) addresses the giving or failure to give a jury instruction. This rule provides, in pertinent part:
 {¶ 16} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
 {¶ 17} Accordingly, because defense counsel did not object pursuant to Crim.R. 30(A), we must review this matter under a plain error analysis. Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 18} Thus, we must determine, under appellant's First Assignment of Error, whether the outcome of the trial clearly would have been otherwise had the trial court instructed the jury on negligent homicide and the defense of accident. Appellant claims negligent homicide is a lesser included offense of murder and that based upon the evidence presented to the jury, the jury could have found appellant failed to form the intent of recklessness and instead determined appellant acted negligently when the gun discharged. Appellant relies upon the decision of State v. Banks (1986), 31 Ohio App.3d 57, in support of her argument that negligent homicide is a lesser included offense of murder.
 {¶ 19} In State v. Koss (1990), 49 Ohio St.3d 213, the Ohio Supreme Court held that negligent homicide is not a lesser included of offense of murder. Id. at paragraph four of the syllabus. The Court reached this conclusion on the basis that negligent homicide is not always and necessarily included in murder because one can purposely cause the death of another by means other than by a deadly weapon or dangerous ordnance. Id. at 219. Therefore, based upon the Koss decision, we reject appellant's argument that negligent homicide is a lesser included offense of murder.
 {¶ 20} We also agree with the state's argument that appellant's defense of accident would have contradicted a charge on negligent homicide because the defense of accident is a complete defense and such a defense would contradict an instruction that the homicide occurred negligently. "* * * [N]o instruction on negligent homicide is required when the theory of the defense is predicated on an accident." State v.Gay (Nov. 2, 1990), Portage 88-P-2043, at 4, citing State v. Hill
(1987), 31 Ohio App.3d 65. In Hill, the court noted that an instruction on negligent homicide would not be appropriate because from the outset of the trial defendant argued that the shooting was accidental. Hill at 67.
 {¶ 21} Further, in State v. Samuels (Sept. 24, 1987), Cuyahoga App. No. 52527, at 2, the court explained, "* * * the appellant presented the defense of accident at trial which by definition negates any element of intent or criminal culpability in the offense as charged. [Citations omitted.] The defense of accident is totally inconsistent with a request for a jury instruction with regard to involuntary manslaughter or negligent homicide in that each of these offenses possess the element of intent and/or criminal culpability. The appellant vis-a-vis the defense of accident argues that the death of the victim did not involve the element of intent or criminal culpability.
 {¶ 22} "Likewise, in the case before us, we find that the trial court properly refused to charge on negligent homicide. Such an instruction would have represented an unreasonable compromise between the state's position — that appellant knowingly killed Jenkins — and appellant's position — that the killing was purely accidental, and thus the charge would have been inconsistent with either the state's or appellant evidence." [Citations omitted.] Id. at 2.
 {¶ 23} For similar results, see, also, State v. Kropka (Oct. 11, 1985), Jefferson App. No. 83-J-29; State v. King (1984), 20 Ohio App.3d 62;State v. Bryant (June 22, 1984), Lucas App. No. L-83-334; and City ofColumbus v. Bee (1979), 67 Ohio App.2d 65. Based upon the above case law, it would have been in error for the trial court to instruct the jury on negligent homicide since appellant relied upon the defense of accident at trial.
 {¶ 24} Appellant also contends, under this assignment of error, that the trial court should have instructed the jury on the defense of accident. This court addressed a similar argument in State v. Rohaley
(Dec. 28, 1998), Stark App. No. 1998CA00092. In Rohaley, the defendant sought an instruction on the defense of accident in a case involving aggravated vehicular homicide with a driving under the influence specification. Id. at 3. The trial court denied defendant's requested instruction. Id. at 7. In upholding the trial court's refusal to instruct on the defense of accident, we stated:
 {¶ 25} "In the instant case, the court had already instructed the jury on causation. The instruction on causation indicated that in order to convict, the jury had to find that appellant's act or admissions, in their natural and continuous sequence, directly produced Letitia Ciban's death. The accident instruction would have simply indicated that the jury could acquit if appellant's acts or admissions were not the natural and reasonably foreseen result of Letitia Ciban's death. Accordingly, the instruction on `accident' did not add anything new to the general charge. Appellant, therefore, has not demonstrated that the result of the proceeding would have been different had the instruction on the defense of accident been given to the jury." Id.
 {¶ 26} The record in the case sub judice indicates the trial court instructed the jury with the standard definition of causation as to murder and reckless homicide. See Tr. Vol. III at 47-52 and 53-56. According to our decision, in Rohaley, a specific instruction on the defense of accident would not have added anything to the general instruction.
 {¶ 27} Therefore, we conclude the trial court did not commit plain error when it failed to instruct the jury on the offense of negligent homicide and the defense of accident.
 {¶ 28} Appellant's First Assignment of Error is overruled.
 II {¶ 29} In her Second Assignment of Error, appellant maintains she received ineffective assistance of counsel when counsel failed to request and/or object to the trial court's failure to instruct on the charge of negligent homicide and the defense of accident. We disagree.
 {¶ 30} A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 31} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 32} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. Lockhart v. Fretwell (1993), 506 U.S. 364, 370.
 {¶ 33} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "* * * need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quoting Strickland at 697. As such, we will direct our attention to the second prong of the Strickland test.
 {¶ 34} In appellant's First Assignment of Error, we concluded the trial court did not commit plain error when it failed to instruct the jury on the offense of negligent homicide and the defense of accident. Because appellant claimed the shooting was accidental, a request for a jury instruction on negligent homicide would have been inconsistent with the defense's strategy of seeking an acquittal. Due to the inconsistency that would have been created by requesting a charge on negligent homicide and pursuing the defense of accident, appellant was not prejudiced by defense counsel's failure to request such an instruction. Further, appellant was also not prejudiced by defense counsel's failure to request an instruction on the defense of accident pursuant to our previous decision in Rohaley.
 {¶ 35} Accordingly, we conclude appellant cannot establish that she was prejudiced by defense counsel's performance. There is no evidence that indicates the result of the trial was unreliable or the proceeding was fundamentally unfair as a result of defense counsel's failure to request a jury instruction on negligent homicide or the defense of accident.
 {¶ 36} Appellant's Second Assignment of Error is overruled.
 III {¶ 37} Appellant contends, in her Third Assignment of Error, that her conviction for reckless homicide, with a gun specification, is against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 38} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenkins (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. It is based upon this standard that we review appellant's Third Assignment of Error.
 {¶ 39} In this assignment of error, appellant contends the jury's verdict is against the manifest weight and sufficiency of the evidence because based upon the evidence, the jury should have accepted her version of how the shooting occurred. We have reviewed the record of this matter and conclude the jury's verdict is not against the manifest weight or sufficiency of the evidence.
 {¶ 40} The following evidence, in the record, supports this conclusion. First, although appellant denied arguing with Benna, Ryan Glagola and Steven Cox both testified that they observed appellant and Benna verbally fighting on the day of the shooting. Tr. Vol. II at 24, 63, 65, 66, 72, 73, 167, 168, 170. Second Michael Short, a criminalist at the Stark County Crime Lab, testified that Benna was at least four and one-half feet from the barrel of the gun when it fired because of the lack of gunshot residue on his clothing. Id. at 142-143, 146, 150-151. Finally, although present in the room when the shooting occurred, Ryan Glagola's version of how the shooting occurred differed from that of appellant's. Ryan explained that appellant went to hand the gun to Benna and she stopped and pulled back to determine whether it was loaded. As she was pulling back, Benna pulled on the other end of the gun and it fired. Id. at 172-173.
 {¶ 41} The above evidence is legally sufficient to prove that appellant was reckless in her handling of the gun and therefore, is sufficient to support appellant's conviction for reckless homicide.
 {¶ 42} Appellant's manifest weight argument challenges the jury's decision not to believe appellant's claim that the gun fired as she flipped it while handing it to Benna. Again, the evidence in the record, which includes Michael Short's testimony, Ryan Glagola's testimony and appellant's own statements and behavior supports the conclusion that the shooting did not occur at stated by appellant. The jury did not lose its way in resolving conflicts in the evidence.
 {¶ 43} Appellant's Third Assignment of Error is overruled.
 {¶ 44} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.