[Cite as *State v. Jones*, 2015-Ohio-5029.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2015-02-020 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>12/7/2015 |
| - vs - | : | |
| | : | |
| DEANGELO J. JONES, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2014-09-1435

Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. Kasten, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Neal D. Schuett, 121 West High Street, Oxford Ohio 45056, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Deangelo Jones, appeals his conviction in the Butler County Court of Common Pleas for reckless homicide.

{¶ 2} Appellant was indicted in October 2014 on one count of involuntary manslaughter with a firearm specification, one count of tampering with evidence, and one count of possessing a defaced firearm. The state alleged that on September 6, 2014, appellant shot his girlfriend (the victim) in the face with a .38 special caliber Smith & Wesson

revolver, subsequently threw the revolver in the Miami River to conceal its discovery, and otherwise possessed a .357 pistol with the serial number removed. A two-day jury trial was held in January 2015. Several witnesses testified on behalf of the state, including the detective who interviewed appellant on five separate occasions. Appellant did not testify or present witnesses on his behalf. However, excerpts of his videotaped interviews were played to the jury during the detective's direct examination. During his interviews and at trial, appellant claimed the gunshot was accidental.

{¶ 3} Testimony at trial revealed that on September 6, 2014, appellant and the victim watched a movie called "Truth or Die" which included a Russian roulette scene. Appellant told the detective that after watching the Russian roulette scene, he decided to act it out and put a bullet in his .38 special caliber, five-shot revolver because he "wanted to." Subsequently, the victim started playing with the revolver, and despite appellant's admonition that the gun was loaded with a bullet, "kept clicking it and clicking it." The victim pulled the trigger four times. Subsequently, as the victim pointed the gun to her right temple, appellant snatched the gun from her hand. Appellant told the detective the gun was in his hands when it fired and shot the victim. Thereafter, instead of providing aid to the victim, appellant fled the scene and threw the gun in the Miami River. He eventually turned himself in and helped the police recover the gun. The victim died from the gunshot wound the following day.

{¶ 4} An autopsy was performed by the Warren County coroner. The coroner testified that the victim died of a gunshot wound to the face and that the gun was fired 10 to 24 inches away from the victim's face. The coroner could not determine whether the manner of death was homicide, suicide, or accident.

{¶ 5} At the close of the evidence, the trial court instructed the jury on involuntary manslaughter, the lesser included offense of reckless homicide, and accident. On January 13, 2015, the jury found appellant guilty of reckless homicide with a firearm specification,

tampering with evidence, and possessing a defaced firearm. Following the jury verdict, the trial court immediately held a sentencing hearing and sentenced appellant to nine years in prison.

{¶ 6} Appellant appeals, raising three assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE DEFENDANT-APPELLANT'S RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN THE TRIAL COURT INCORRECTLY INSTRUCTED THE JURY ON THE ELEMENTS OF "ACCIDENT."

{¶ 9} On the first day of trial, appellant submitted a written request for a specific jury instruction on the defense of accident. The trial court declined to give the requested jury instruction. Instead, and over appellant's objections, the trial court provided the jury with the definition of "accident" from Black's Law Dictionary:

> The Defendant, DeAngelo Jones, denies that he committed an unlawful act and says the death of [the victim] was accidental. An accident is an unforeseen injurious occurrence. It is something that does not occur in the usual course of events or that could not be reasonably anticipated. An accident is an unforeseen and injurious occurrence not attributable to mistake, neglect, or misconduct.

{¶ 10} The trial court specifically declined to provide the jury with the definition of "accident" requested by appellant or as set forth in the Ohio Jury Instructions (OJI) because both definitions refer to "purpose" or "intent." Because the jury was going to be instructed on the lesser offense of reckless homicide, the trial court felt it was important for the jury to consider that where something results from "mistake, neglect, or misconduct," it does not constitute an "accident."

{¶ 11} Appellant argues that because there was evidence at trial that "the gun's discharge was the result of an accident," the trial court's jury instruction on accident was erroneous and contrary to Ohio law. Specifically, appellant takes issue with the trial court's

instruction that an accident is "not attributable to mistake, neglect, or misconduct." Appellant asserts that the phrase incorrectly defines "accident" and fails to instruct the jury that "accident negates guilt," as required by the Ohio Supreme Court in *State v. Robinson*, 47 Ohio St.2d 103 (1976).

{¶ 12} We review a trial court's jury instructions for an abuse of discretion. *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132, ¶ 52. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 129-130. An appellate court may not reverse a conviction in a criminal case based upon jury instructions unless "it is clear that the jury instructions constituted prejudicial error." *State v. Campbell*, 12th Dist. Butler No. CA2009-08-208, 2010-Ohio-1940, ¶ 13. An appellate court's duty is to review the instructions as a whole, and, if taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. *State v. Shepard*, 10th Dist. Franklin No. 07AP-223, 2007-Ohio-5405, ¶ 7.

{¶ 13} A trial court must fully and completely give jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. Specifically, "a court's instructions to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings." *State v. Guster*, 66 Ohio St.2d. 266, 271 (1981) (general propositions, even though correct, ought not to be given unless specifically applicable to facts in issue). In a criminal case, proposed jury instructions that are correct, pertinent, and timely presented must be included, at least in substance, in the general charge. *Id.* at 269. However, the trial court is not required to give a proposed jury instruction verbatim. The court may use its own language to communicate the same legal principles in language it deems

- 4 -

proper. *State v. Sneed*, 63 Ohio St.3d 3, 9 (1992); *State v. McLavin*, 12th Dist. Fayette No. CA2006-11-044, 2007-Ohio-5633, ¶ 17.

{¶ 14} Initially, we note that a trial court does not abuse its discretion simply because it uses dictionary definitions to define terms not defined by statute. *See State v. Jackson*, 12th Dist. Butler No. CA2011-06-096, 2012-Ohio-4219 (when words are not defined in a statute, courts have used dictionary definitions to determine the plain and ordinary meaning of a statutory term); *State v. Rivera*, 8th Dist. Cuyahoga No. 56158, 1989 WL 136349 (Nov. 9, 1989) (Black's Law Dictionary meets the common usage standard under R.C. 1.42); *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550 (relying on Black's Law Dictionary to define the legal term "prejudice").

{¶ 15} We also note that jury instructions found in the OJI "are not mandatory. Rather, they are recommended instructions, based primarily upon case law and statutes. The particular instruction to be given in a jury trial is fact specific and based upon the indictment, testimony, evidence, and defenses available to the defendant." *State v. Jordan*, 11th Dist. Lake No. 2009-L-006, 2009-Ohio-6152, ¶ 40.

{¶ 16} Upon reviewing the trial court's jury instructions as a whole, we find that the trial court did not abuse its discretion in providing the jury with the Black's Law Dictionary definition of accident rather than the definition requested by appellant or set forth in the OJI.

{¶ 17} Accident is not an affirmative defense. Rather, "it is a factual defense that denies that the accused acted with the degree of culpability or mens rea required for the offense, when that involves purposeful conduct." *In re F.D.*, 8th Dist. Cuyahoga No. 102135, 2015-Ohio-2405, ¶ 32. By raising the defense of accident, appellant denied that the gunshot was intentional or purposeful (two synonymous terms here). But intent and purpose are not dispositive in this case.

{¶ 18} Appellant was indicted for involuntary manslaughter, which required the state to

prove that appellant knowingly caused serious physical harm to the victim and ultimately her death by shooting her. The case also involved the lesser included offense of reckless homicide, which required proof that appellant acted recklessly when he snatched the five-shot revolver, loaded with one round, from the victim's hand after the fourth trigger-click.

{¶ 19} "Accident" is defined in OJI as follows:

> An accidental result is one *that occurs unintentionally and without any design or purpose* to bring it about. An accident is a mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act.

(Emphasis added.) Ohio Jury Instructions, CR 421.01 (2013). The trial court was correct that the OJI definition of "accident" was not appropriate in a case such as here where "purpose" is not the culpable mental state. The OJI definition would have been confusing in that the jury could have found that the appellant "recklessly" caused the victim's death yet acquitted appellant of reckless homicide because he did not act with "design, intent or purpose."

{¶ 20} Given the facts of the case, we find the trial court did not abuse its discretion in declining to provide the jury with the accident instruction requested by appellant or set forth in the OJI, both of which refer to intent, design, and purpose. Likewise, given the facts of this case, the trial court did not abuse its discretion in providing the jury with the Black's Law Dictionary definition of accident. The trial court had the duty to fully include all information which is relevant and necessary for the fact finder in its jury instructions. *Jackson*, 2012-Ohio-4219 at ¶ 36. The trial court's jury instruction on accident was fact specific and based upon the indictment, testimony, evidence, and defenses available to appellant, and was thus accurate and appropriate.

{¶ 21} Appellant also asserts that the trial court's jury instruction on accident is inadequate because it fails to instruct the jury that "accident negates guilt," as required by the

Ohio Supreme Court's decision in *Robinson*, 47 Ohio St.2d 103.

{¶ 22} Appellant cites *Robinson* for the proposition that a proper jury instruction on accident must "(1) include the elements of accident; and (2) explain that accident negates guilt." The main issue in *Robinson* was "whether the trial court committed prejudicial error by instructing the jury that the defendant bore the burden of proving his affirmative defense of self-defense." *Id.* at 106. While *Robinson* briefly cites accident as a non-affirmative defense, the supreme court's decision did not hold that a proper jury instruction on accident must include the elements of accident and explain that accident negates guilt. In fact, *Robinson* does not set forth any test at all for a jury instruction on accident. Accordingly, *Robinson* does not apply here.

{¶ 23} In addition, had the jury credited appellant's claim that the gunshot was accidental, then appellant was not "reckless" and the jury would have been required to find him not guilty of reckless homicide pursuant to the trial court's overall jury instructions. *See State v. Wyatt*, 12th Dist. Butler No. CA2010-07-171, 2011-Ohio-3427. Because the trial court properly instructed the jury on the burden of proof and the elements of reckless homicide, the additional instruction that "accident negates guilt" added nothing of substance to the general charge and would have been redundant. *See State v. Glagola*, 5th Dist. Stark No. 2003CA00006, 2003-Ohio-6018.

{¶ 24} In light of all of the foregoing, we find that when taken in their entirety, the trial court's jury instructions fairly and correctly stated the law applicable to the evidence presented at trial. Appellant's first assignment of error is accordingly overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED TEXT MESSAGES INTO EVIDENCE OVER DEFENSE COUNSEL'S OBJECTION.

{¶ 27} Appellant challenges the admission into evidence and over his objections of

text messages the victim sent to her father on the eve and day of the incident, and particularly, two minutes before the gunshot. Appellant argues the text messages were unfairly prejudicial, misleading, and confusing to the jury in violation of Evid.R. 403(A).

{¶ 28} The text messages showed that the victim was making plans for the next two days. The state offered the text messages to show it was unlikely that someone who was planning for the future was playing Russian roulette at the time of the incident as claimed by appellant. The trial court overruled appellant's objection and gave the jury the following limiting instruction: "the court is going to permit you to see the text messages, they're not being offered * * * for the truth of the matter, it's being offered to show the timeline and * * * what [the victim's] state of mind was and what she was doing at the time she was texting."

{¶ 29} A trial court has broad discretion in determining the admissibility of evidence at trial. *Wyatt*, 2011-Ohio-3427 at ¶ 7. Absent an abuse of discretion and a showing the appellant suffered material prejudice, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *Id.*

{¶ 30} Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." While evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case, only evidence that is *unfairly* prejudicial is excludable under Evid.R. 403(A). *Crotts*, 2004-Ohio-6550 at ¶ 23. As the Ohio Supreme Court stated, "Evid.R. 403 speaks in terms of unfair prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. It is only the latter that Evid.R. 403 prohibits." *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107; *State v. Smith*, 12th Dist. Butler No. CA2008-03-063, 2009-Ohio-5517, ¶ 60.

{¶ 31} We find that the text messages were neither unfair nor did they confuse the

issues or mislead the jury. The text messages showed that the victim was planning for the future, to wit, she needed to be picked up from appellant's house the day after the incident so that she could retrieve her birth certificate and bring it to a place of employment. The last two texts sent by the victim to her father two minutes before the gunshot, emphasized her need to be picked up the following day. Earlier during trial, appellant's great-uncle testified that at the time of the incident, appellant and the victim had been living together with him for about a month, and that the great-uncle had been helping the victim as she wanted to get a job. Following the admission of the text messages, the victim's father testified that the victim (1) planned to stay with him on the day after the incident and do her laundry, (2) was applying for a job on Monday, hence needed her birth certificate, and (3) was intent on getting a job that Monday because she was seeking custody of her daughter.

{¶ 32} We find that the text messages did not *unfairly* prejudice appellant. *Crotts*, 2004-Ohio-6550 at ¶ 23. Accordingly, we find the trial court did not abuse its discretion in admitting the text messages. Appellant's second assignment of error is overruled.

{¶ 33} Assignment of Error no. 3:

{¶ 34} APPELLANT'S CONVICTION FOR RECKLESS HOMICIDE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 35} Appellant argues his conviction for reckless homicide is against the manifest weight of the evidence because "credible testimony" and DNA evidence indicate the gunshot was an accident rather than appellant acting recklessly.[1] Accordingly, appellant asserts the jury "clearly lost its way" and his conviction for reckless homicide must be reversed.

{¶ 36} In determining whether a conviction is against the manifest weight of the evidence, this court, reviewing the entire record, must weigh the evidence and all reasonable

---

1. Testimony at trial indicates that more than one DNA was found on the weapon. However, the DNA could not be identified.

inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 220. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *State v. Bailey*, 12th Dist. Butler No. CA2002-03-057, 2003-Ohio-5280, ¶ 22.

**{¶ 37}** Appellant was convicted of reckless homicide, in violation of R.C. 2903.041(A), which states: "No person shall recklessly cause the death of another[.]" A person acts recklessly when,

> with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences he perversely disregards a known risk that such circumstances are likely to exist.

R.C. 2901.22(C).

**{¶ 38}** After a thorough review of the record, we find that the jury neither lost its way nor committed a manifest miscarriage of justice in convicting appellant of reckless homicide.

**{¶ 39}** "It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely to produce serious injury or death." *State v. Norris*, 8th Dist. Cuyahoga No. 91000, 2009-Ohio-34, ¶ 20. Testimony at trial revealed that the victim was shot in the face with appellant's gun, a .38 special-caliber, five-shot revolver. The coroner testified the gun was fired 10 to 24 inches away from the victim's face.

**{¶ 40}** During his interviews, appellant told the detective that after watching a Russian

roulette scene in a movie, he decided to act out the scene and put a bullet in his .38 revolver because he "wanted to." Subsequently, the victim started playing with the revolver, and despite appellant's admonition that the gun was loaded with a bullet, "kept clicking it and clicking it." Appellant told the detective that after the victim pulled the trigger four times, he knew that if she pulled "the last click, it's over." Nevertheless, after the fourth click, appellant snatched the loaded gun from the victim's hand as she pointed it to her head. Appellant told the detective the gun was in his hands when it fired and shot the victim. Thereafter, instead of providing aid to the victim, appellant fled the scene and threw the gun in the Miami River. The victim died from the gunshot wound the following day.

{¶ 41} In light of the foregoing, we find the jury did not err in finding appellant guilty of reckless homicide when he snatched the loaded revolver, a gun he had loaded himself, from the victim's hand as she was pointing it close to her head, all the while knowing the five-shot revolver was "on its last click" as the victim had already pulled the trigger four times. While appellant argued at trial that the gunshot was an accident, it is well-established that "a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11; *see also In re F.D.*, 2015-Ohio-2405 (whether to believe a defendant's accident theory is within the purview of the trier of fact). As the trier of fact in this case, the jury was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *State v. Davis*, 12th Dist. Butler No. CA2010-06-143, 2011-Ohio-2207, ¶ 43.

{¶ 42} Appellant's conviction for reckless homicide is accordingly not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.

{¶ 43} Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.