[Cite as *State v. Towson*, 2022-Ohio-2096.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-08-069 |
| - vs - | : | O P I N I O N<br>6/21/2022 |
| | : | |
| NORMAN TOWSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case No. 2021CRB000184

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Kane Law Offices, LLC, and Travis Kane, for appellant.

**HENDRICKSON, J.**

{¶1}   Appellant, Norman Towson, appeals his convictions in the Warren County Court.

{¶2}   In March 2021, Towson was charged with one count of aggravated menacing and one count of domestic violence.  The charges arose out of allegations that on March

18, 2021, Towson entered the home he shared with his ex-girlfriend, Carrie Day, and pointed a firearm at the heads of Day and her boyfriend, Barry Rogers, in order to force them to leave the residence.

{¶3} Towson pled not guilty to the charges and a jury trial was held in July 2021. At trial, the state presented testimony from Day, Rogers, and Warren County Deputy Sheriff Dalton Farmer. According to the testimony provided by the state's witnesses, Day and Towson met in 2007 and engaged in an on-again off-again romantic relationship between 2007 and 2015. At the time of the incident, Day and Towson lived together at 4763 North Waynesville Road ("the home") pursuant to a land contract.

{¶4} In February 2020 Day began dating Rogers. Although the two met in Ohio at a local campground, Rogers lived in Louisiana. In March 2021, Rogers planned to visit Day in Ohio. Prior to the trip, Day asked Towson if Rogers could stay at their home during his visit, to which Towson responded, "No. You want me to kill that fucker?"

{¶5} Approximately two weeks later, on March 18, 2021, Day picked up Rogers from the airport. On the way to their cabin, where they intended to stay for the weekend, the couple stopped at the home to grab clothes and visit Day's dog. Believing that Towson would not be home for some time, the couple proceeded to play a "ring toss" game in the home's rec room.

{¶6} While the couple was playing the ring toss game, Towson arrived home unexpectedly. Upon arriving, Towson entered the rec room, and said, "is that that fucker [Rogers]?" At that point, Towson removed a handgun from his coat pocket and pointed it at Day and Rogers' faces from approximately five feet away. While pointing the firearm at Day and Rogers, Towson threatened to kill them both. According to Day, Towson was really drunk, stoned, and "obliviated" when he arrived home, and she was afraid he was going to shoot her. Rogers also testified that he believed Towson was going to shoot and

kill him that night.

{¶7} When Towson pointed the firearm at Rogers, Day stepped between the two men and explained that Rogers was her mom's cousin. Upon learning that the unknown man was the cousin of Day's mother, Towson appeared confused and proceeded to walk outside the home to his vehicle. After Towson walked outside, Rogers walked out a separate door and started the truck. When Towson returned to the rec room, he walked to the kitchen, at which point Day left the home and she and Rogers drove to a nearby motel. Upon arriving at the motel, Day called the police and reported the incident.

{¶8} On cross-examination, Day testified that she has access to a weapon at home but denied that people could expect her to have a gun at home or that she routinely carries a gun at home. Day also denied that she had ever threatened to harm or kill Towson, nor had she said she was going to "'f' him up, if he kept bothering [her]" or pointed a gun at him. Rogers also testified that Day did not have a gun on or near her at any time on March 18, 2021.

{¶9} After Day reported the incident, officers responded to the motel and to the home. Deputy Sheriff Dalton Farmer testified he was dispatched to the home in response to a "subject with a weapon." Upon arriving, Deputy Farmer made contact with Towson, who the deputy described as "a little bit agitated." After conducting a pat down, Deputy Farmer confirmed Towson did not have a weapon on him at that time.

{¶10} According to the deputy, Towson described the events as follows: "[H]e had come home and he walked through their garage, they call it the rec room. He found [Day] with an unknown male. He knows lately she's been running around with a guy named [Rogers], that she met at Miller's campground, so he asked who the male was. They were drinking and playing a ring toss game. [Day] told him that it was her cousin and he asked them to leave and that was the end of the incident from there." Towson denied pointing a

firearm at anyone but admitted to the deputy that he had his hand on a firearm in his pocket during the encounter. Towson then took the deputy to Towson's bedroom, where the firearm was sitting on the nightstand by his bed. Although there was not a round chambered, the firearm's magazine was fully loaded.

{¶11} The deputy testified Towson did not indicate that he saw Day with a firearm in the home or that either Day or Rogers came at him in an aggressive manner. Towson did not make any statement or claim to the deputy that was indicative of acting in self-defense that night and did not report that either victim tried to engage him in a fight or argument that evening. As a result of the deputy's investigation, Towson was arrested and charged with aggravated menacing against Rogers and domestic violence against Day.

{¶12} Following the state's presentation of its case-in-chief, Towson moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion and Towson proceeded to present testimony from Deputy Sheriff Brombaugh, Towson's son, and a friend from the community. Towson was the final witness to testify, during which he denied the allegations of Day and Rogers and categorized the events as a "set up." According to Towson, Day's vehicle was in their driveway when he arrived home on March 18, 2021. When he got out of his car, he saw there were a "couple people" inside the home jumping up and down. At that point, he saw Day through the window and noticed that she had a "bulge" in her pocket, which he believed was the firearm that Day typically carried in her front pocket. Upon walking in, Towson asked Day, "why are you here," to which she responded, "this is my cousin, Todd."

{¶13} Towson indicated that "right behind [Day] there's a cabinet" with a hole in it where Day kept her "butcher knives." Towson asked them to leave, and Day and Rogers began laughing at him. At that point, Towson put his hand in his pocket and displayed the firearm to Day so that she could "see [he] had it, the handle." Upon viewing the weapon,

Day and Rogers left the home. According to Towson, he had a firearm on him that day because he was afraid of Day, but he denied pointing the firearm at either Day or Rogers.

{¶14} On cross-examination, Towson could not recall whether he told Deputy Farmer that Day had a gun that night, but indicated he probably did not. Towson acknowledged that Rogers did not come at him that night and when asked if Day came at him he responded, "not really." He later indicated that Day "kind of started at [him] once, but then she saw the gun and that's when, you know" they left. He then clarified that, "well, she didn't—you know, she took a couple steps" and "stepped towards" Towson, but she was "20 feet away at least." Towson also testified that although Day kept her "big knives" in the nearby cabinet, she never held, brandished, or threatened him with a knife that evening.

{¶15} After the close of the evidence, Towson renewed his Crim.R. 29 motion and discussed the jury instructions with the trial court on the record. At that time, the trial court stated, "there are a couple of instructions that the defense is requesting that the Court indicated back in chambers it was not inclined to give * * * I know one of those requests was the self-defense instruction[.] I have considered that, however, in the Court's opinion, the evidence is not triggered for the Court to give those instructions to the jury."

{¶16} After considering the above testimony, the jury found Towson guilty as charged. Shortly thereafter, Towson moved the trial court for a new jury trial due to the court's "reversible and clear error in its refusal to give a self-defense instruction[.]" At the sentencing hearing, the trial court denied Towson's motion and proceeded to sentence Towson to 30 days in jail, with 27 days of jail-time credit, and ordered Towson to pay a combined fine of $350.00.

{¶17} Towson now appeals, raising the following assignment of error:

{¶18} THE TRIAL COURT ERRED BY VIOLATING APPELLANT'S RIGHTS TO

DUE PROCESS AND A FAIR TRIAL BY REFUSING TO INSTRUCT THE JURY ON SELF-DEFENSE.

**{¶19}** Towson argues that in declining to instruct the jury on self-defense, the trial court denied him the opportunity to present a defense to his actions and "essentially instruct[ed] the jury to not believe his testimony." After reviewing the entirety of the record, we disagree with Towson's claim.

**{¶20}** We review a trial court's jury instructions for an abuse of discretion. *State v. Jones*, 12th Dist. Butler No. CA2015-02-020, 2015-Ohio-5029, ¶ 12.[1] An appellate court may not reverse a conviction in a criminal case based upon jury instructions unless "it is clear that the jury instructions constituted prejudicial error." *Id.*

**{¶21}** A trial court does not err in failing to instruct the jury on an affirmative defense where the evidence is insufficient to support the instruction. *State v. Palmer*, 80 Ohio St.3d 543, 564 (1997); *State v. Strunk*, 12th Dist. Warren No. CA2006-04-046, 2007-Ohio-683, ¶ 16. In reviewing the record to ascertain the presence of sufficient evidence to support the giving of a proposed jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction. *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 35, citing *State v. Risner*, 120 Ohio App.3d 571, 574 (3d Dist.1997).

**{¶22}** Traditionally, self-defense has been an affirmative defense which an accused must prove by a preponderance of the evidence. *State v. Gesell*, 12th Dist. Butler No.

---

1. The state submits Towson has waived all but plain error due to his failure to formally object to the trial court's denial of his request for a self-defense jury instruction. However, a defendant need not formally object where the record affirmatively demonstrates the trial court has been fully apprised of the correct law governing a material issue in dispute. *State v. Glover*, 12th Dist. Fayette No. CA20216-11-016, 2017-Ohio-7360, ¶ 51-52, citing *State v. Wolons*, 44 Ohio St. 64 (1989), paragraph one of the syllabus. Because the record demonstrates counsel and the trial court discussed the self-defense instruction in chambers, and again on the record, we conclude the court was fully apprised of the relevant law governing the instruction at issue, and Towson has not waived the objection.

- 6 -

CA2005-08-367, 2006-Ohio-3621, ¶ 47. However, effective March 28, 2019, the General Assembly amended Ohio's self-defense statute, R.C. 2901.05, to place the burden of proof on the state to prove beyond a reasonable doubt that the accused did not act in self-defense. *State v. Byrd*, 12th Dist. Warren No. CA2019-07-073, 2020-Ohio-3073, ¶ 22. As amended, R.C. 2901.05 provides as follows:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶23} "[E]vidence 'tends to support' that a defendant used force in self-defense, and a defendant is entitled to a jury instruction on the defense of self-defense under R.C. 2901.05, as amended, where the evidence in the record is sufficient to raise a question of reasonable doubt of guilt, based on a claim of self-defense, in the mind of a reasonable juror." *State v. Jacinto*, 8th Dist. Cuyahoga No. 108944, 2020-Ohio-3722, ¶ 49. If the evidence brought forward generated only mere speculation of a self-defense claim, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury is unwarranted. *State v. Delaffuente*, 12th Dist. Butler Nos. CA2015-03-040 and CA2015-03-042, 2015-Ohio-4917, ¶ 8.

{¶24} It is well established that in cases involving use of deadly force, the elements of a valid claim of self-defense are as follows: (1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force; and (3) the accused did not violate

any duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002); *State v. Clemmons*, 12th Dist. Butler No. CA2020-01-004, 2020-Ohio-5394, fn. 4. Conversely, in cases involving the use of nondeadly force, there is no duty to retreat or avoid the danger. *Gesell* at ¶ 47. Additionally, a defendant has "no duty to retreat before using force in self-defense in [his] own home." *State v. White*, 12th Dist. Warren CA2018-09-107, 2019-Ohio-4312, ¶ 45, citing *State v. Thomas*, 77 Ohio St.3d 323, 327 (1997).

**{¶25}** A defendant is privileged to use that force which is reasonably necessary to repel the attack of another. *Id.* at ¶ 46. However, the use of force must be warranted under the circumstances and proportionate to the perceived threat. *Byrd* at ¶ 24.

**{¶26}** In this case, after a thorough review of the record, we find no error in the trial court's decision refusing to provide the jury with an instruction on self-defense. Even assuming a reasonable juror could find that Towson was not at fault in creating the situation that gave rise to the encounter, there is no evidence from which a jury might reasonably conclude that Towson had a bona fide belief that he was in imminent danger of bodily harm. According to Towson's own testimony, he was aware that Day and an unknown man were in the home at the time he arrived, and he proceeded to engage in conversation with the couple. Although Towson testified he believed Day possessed a firearm at that time, there was no evidence introduced that either Day or Rogers touched, held, brandished, or otherwise maintained a firearm during the encounter. Rather, Towson's belief that Day possessed a firearm was unsubstantiated by the testimony produced at trial and was purely speculative in nature.

**{¶27}** Towson's testimony regarding Day's proximity to the knife cabinet is also insufficient evidence to warrant a self-defense instruction. This is because, despite his testimony that Day was standing near a cabinet where she kept her "butcher knives," Towson clarified that Day did not possess a knife during the incident and he was unsure if

she moved toward the cabinet during the encounter. Accordingly, Towson's testimony regarding Day's proximity to the cabinet and access to a knife alone does not establish that he reasonably believed Day would access and use a knife against him during the encounter.

{¶28} Notably, Towson's testimony alone that he was acting in self-defense does not warrant a self-defense instruction. *See State v. Voss*, 12th Dist. Warren No. CA2006-11-132, 2008-Ohio-3889, ¶ 56 (where there was no evidence in the record, other than the defendant's own self-serving statements that she was acting in self-defense, to support the elements of a self-defense claim, the trial court did not err by failing to give a jury instruction); *State v. Reyes-Figueroa*, 8th Dist. Cuyahoga No. 108609, 2020-Ohio-4460, ¶ 29. Here, despite Towson's testimony regarding his fear of Day and his belief that Day was "dangerous," the record does not demonstrate that either Day or Rogers behaved in a physically threatening manner prior to Towson threatening the two with his firearm. Rather, as described by Towson, the encounter consisted of a conversation between the three parties from more than 20 feet away. During the conversation, neither Day nor Rogers made any threatening statements or took any threatening actions toward Towson. Instead, Towson testified Day and Rogers simply laughed at him and "got what they wanted." After laughing at him and viewing his weapon, the two left the home. Even when accepting Towson's version of events as true, a reasonable juror could not conclude, or reasonably infer, that Towson believed he was in imminent danger of bodily harm that night at his home. Rather, Towson merely speculated that he was at risk of bodily harm during the encounter prior to brandishing his loaded firearm.

{¶29} Accordingly, after carefully reviewing the record in this case, we find that there was insufficient evidence to warrant a jury instruction on self-defense. There is no evidence from which a jury might reasonably conclude that Towson had a bona fide belief that he was in imminent danger of bodily harm. As such, the trial court did not abuse its discretion

in declining to give a self-defense jury instruction. Finding no merit to Towson's argument, we overrule his assignment of error.

**{¶30}** Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.