[Cite as *State v. Powell*, 2026-Ohio-2069.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 24CA20 |
| | : | |
| v. | : | |
| | : | DECISION AND |
| John Powell, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Angela Miller, Jupiter, Florida, for appellant.

Anneka P. Collins, Highland County Prosecutor, and Adam J. King, Highland County Assistant Prosecutor, Hillsboro, Ohio, for appellee.

_____

Smith, P.J.

{¶1} Appellant, John Powell, appeals the judgment of the Highland County Court of Common Pleas convicting him of two counts of involuntary manslaughter, one count of corrupting another with drugs, one count of endangering children, and one count of tampering with evidence. On appeal, appellant contends that 1) the trial court committed reversible error when it refused to give a complete accident instruction; 2) the trial court failed to provide all the mandatory Reagan Tokes notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing; 3) the trial court erred when it imposed consecutive sentences;

and 4) his convictions for involuntary manslaughter, endangering children, and

corrupting another with drugs were not supported by sufficient evidence. Because

we find no merit to appellant's first, third, and fourth assignments of error, they are

overruled. Thus, the jury's finding that appellant was guilty as charged of all five

counts of the indictment is affirmed. However, because we find merit to

appellant's second assignment of error, the assignment of error is sustained and the

judgment must be reversed and remanded to the trial court for resentencing.

FACTS

{¶2} On July 2, 2024, appellant was indicted on the following felony counts:

Count one:   Involuntary Manslaughter, a first-degree felony in violation of R.C. 2903.04(A) (based on the predicate felony of Corrupting Another with Drugs;

Count two:   Involuntary Manslaughter, a first-degree felony in violation of R.C. 2903.04(A) (based upon the predicate felony of Endangering Children);

Count three: Corrupting Another with Drugs, a second-degree felony in violation of R.C. 2925.02(A)(3);

Count four:  Endangering Children, a third-degree felony in violation of R.C. 2919.22(A); and

Count five:  Tampering with Evidence, a third-degree felony in violation of R.C. 2921.12(A)(1).

The charges stemmed from an incident that occurred on December 23, 2023, which

resulted in the death of appellant's ten-year old granddaughter while she was in his

care.

{¶3} Appellant pled not guilty to the charges and the matter proceeded to a jury trial on October 29, 2024. The evidence introduced at trial revealed that appellant's son and his family and several others celebrated Christmas at appellant and his wife's house on December 23, 2023. After appellant had a long day of preparing for the celebration and celebrating, his grandchildren asked to spend the night at his house. The children's parents agreed, with a plan to go home and get Christmas gifts ready for their children. Around 11:00 p.m., the children were in bed, but appellant's ten-year-old granddaughter was coughing badly. Appellant made the decision to retrieve medication from the medicine cabinet in the kitchen, where he conceded was not well-lit, and proceeded to administer medication which turned out to be morphine to his granddaughter. When the other children awoke the next morning, the ten-year old child did not awaken. When appellant went to the bedroom to check on her, he found her deceased in the bed.

{¶4} An ambulance was called and it appears that appellant and/or his wife tried to begin resuscitation efforts. However, when paramedics arrived, it was clear to them that the child had been deceased for some time. At some point during these events, the child's parents were called to the house and informed the child had died. The other children in the house witnessed these events.

{¶5} When law enforcement arrived that morning, appellant informed them that he given the child liquid Tylenol for her cough and he turned the bottle over to

them. The evidence later introduced at trial indicated that the bottle had a dose cup on the top of it with water droplets present, indicating it had been recently used and rinsed out. The evidence indicated that at some point during the day, appellant removed a bottle of morphine from his cabinet and hid it in his garage. By his own admission, he then disposed of the bottle at a gas station several days later when he was on his way to the child's funeral.

{¶6} An investigation began and appellant maintained that he had given the child Tylenol. When an autopsy report indicated the child died from morphine intoxication, appellant continued to deny that he had morphine in his house, but then he finally admitted that he had had morphine at his house for his mother at the recommendation of hospice. He stated that he believed he had disposed of it when she entered a nursing home. Finally, upon being informed that the child died of morphine intoxication, he informed law enforcement that he had only given the child a little bit, stating that it hadn't even been a full dose. That is when appellant finally admitted to hiding the morphine and then disposing of it.

{¶7} The State introduced several witnesses at trial. Pertinent to the issues on appeal were X.P., appellant's nine-year old grandson who was present in the house when the incident occurred and who testified that he saw appellant run out of the house to either the garage or the shed on the morning at issue, and Dr. Susan Brown, who testified that the victim's cause of death was morphine intoxication.

Additionally, Detective Erica Engle with the Highland County Sheriff's Office testified, stating that appellant handed her a "pink Equate bottle of over-the-counter medication out of the windowsill" when asked what medication he had given the child the night prior. She testified that the dose cup with the bottle had water drippings as if it had been rinsed out recently.

{¶8} Finally, Lieutenant Detective Vincent Antinore with the Highland County Sheriff's Office testified. He stated that he spoke with appellant the day of the incident and then conducted a second interview of appellant after the autopsy report was received. He testified that appellant assured him that he did not have morphine in the house and allowed him to search the medicine cabinet. He explained that after he subsequently learned from the victim's father that appellant's mother had one prescription for morphine, he obtained an OARRS report showing that appellant's mother had a prescription for morphine filled on February 20, 2023. He testified that during a third interview of appellant and after being informed that the child's cause of death was morphine intoxication, appellant admitted that he had morphine in the house. More specifically, Antinore testified as follows:

> John admitted that he had been lying and John said that he was scared. Said that he gave her, had given [the victim] morphine, she had been coughing and that he did, in fact, hide the morphine prior to calling for help, prior to us arriving he had taken it out of the house and hid it in the garage or shed right next to the house. I asked him where the morphine was currently and

he told me that on the very day of [the victim's] funeral he took it with him to get rid of it out of county [sic] hoping that it would never be found.

* * *

This interview when he told me that he had, in fact, given her morphine. I told John, well, I asked him, do you know what killed [the victim]. And John replied, well, they told me pneumonia. I said, no, it was [a] drug overdose. And he said, really? I said, morphine. And then John replied, but I only gave her a just a little bit.

Detective Antinore clarified on cross-examination that he understood appellant's statement to be an admission that he knew he was giving the child morphine at the time it was administered.

{¶9} Appellant testified in his own defense at trial. He testified, for the first time, that it was his intention to give the child prescription cough medicine, not morphine. He claimed that he did not fill the dose cup with a full dose and did not know that it was liquid morphine at the time he gave it to her but instead thought that it was "prescription cough medicine." He denied that his statement to Detective Antinore was an admission that he knowingly gave the child morphine at the time he did it, but he also conceded on cross-examination that it was reckless to give the child someone else's prescription medication.

{¶10} Prior to trial and again at the conclusion of the presentation of evidence, appellant requested that an accident instruction be provided to the jury for counts one through four. The trial court refused to provide the instruction for

reasons that will be fully discussed under appellant's first assignment of error. However, the trial court instead instructed the jury on mistake of fact. Ultimately, the jury found appellant guilty of all charges contained in the indictment.

{¶11} The trial court merged counts two, three, and four with count one for purposes of sentencing and imposed a minimum sentence of 7 years on count one, with a potential sentence of 3.5 additional years. The trial court also sentenced appellant to 18 months on count five, to be served consecutively with count one, for a total possible sentence of 12 years. Appellant has now filed his timely appeal, setting forth 4 assignments of error for our review.

ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO GIVE A COMPLETE ACCIDENT INSTRUCTION IN VIOLATION OF APPELLANT POWELL'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

II.     THE TRIAL COURT FAILED TO PROVIDE ALL THE MANDATORY REGAN TOKES LAW [SIC] NOTIFICATIONS SET FORTH IN R.C. 2929.19(B)(2)(c) AT THE SENTENCING HEARING.

III.    THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES ON APPELLANT POWELL.

IV.    POWELL'S CONVICTIONS FOR INVOLUNTARY MANSLAUGHTER, ENDANGERING CHILDREN, AND CORRUPTING ANOTHER WITH DRUGS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

ASSIGNMENT OF ERROR I

{¶12} In his first assignment of error, appellant contends that the trial court committed reversible error when it refused to give a complete accident instruction. Appellant argues that because he claimed that he meant to give his granddaughter prescription cough medication, and not the liquid morphine belonging to his mother that he thought he had disposed of, that the morphine overdose was a tragic accident. He argues that because his defense theory below was that of accident, he was entitled to an accident instruction and the trial court's refusal to provide the instruction constitutes reversible error.

{¶13} The State argues that an accident instruction would have been improper here because the mental states set forth in the crimes charged were "knowingly" and "recklessly," not "purposely." The State further argues that the evidence below demonstrated that appellant's act of administering the substance was not an accident because appellant admitted to administering the substance, although he claimed that he mistakenly believed he was administering cough syrup. Thus, the State argues the trial court's refusal to provide an accident instruction and decision to instead provide an instruction on mistake of fact was appropriate.

## Standard of Review

{¶14} A trial court has a duty to provide the jury with full and complete instructions, and we review a trial court's refusal to give a requested jury instruction under an abuse of discretion standard. We have explained that:

> A trial court generally has broad discretion in deciding how to fashion jury instructions. However, "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." "Additionally, a trial court may not omit a requested instruction, if such instruction is 'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.' " "When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case."

(Citations omitted.) *State v. Kelly*, 2021-Ohio-2007, ¶ 13 (4th Dist.).

{¶15} " 'An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable.' " *Kelly* at ¶ 14, quoting *State v. Ables*, 2012-Ohio-3377, ¶ 9 (4th Dist.), citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). This Court has explained the standard in more detail as follows:

> " 'A decision is unreasonable if there is no sound reasoning process that would support that decision.' " [*State v. Ford*, 2019-Ohio-4539, ¶ 106], quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "[A]n 'arbitrary' decision is one made 'without consideration of or regard for facts [or] circumstances.' " *State v. Beasley*, 2018-Ohio-16, ¶ 12, quoting Black's Law Dictionary

125 (10th Ed. 2014), and citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting Black's Law Dictionary 96 (5th Ed. 1979) ("arbitrary" means " 'without adequate determining principle; * * * not governed by any fixed rules or standard' "). An unconscionable decision is one "showing no regard for conscience" or "affronting the sense of justice, decency, or reasonableness." Black's Law Dictionary (11th Ed. 2019). An unconscionable decision also may be characterized as "[s]hockingly unjust or unfair." Black's Law Dictionary (11th Ed. 2019).

*State v. Sharpe*, 2025-Ohio-440, ¶ 7 (4th Dist.).

Furthermore, as noted in *Sharpe*, "when reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court." *Id.*, citing *State v. Grate*, 2020-Ohio-5584, ¶ 187; *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138 (1991).

{¶16} "An appellate court may not reverse a conviction in a criminal case based upon jury instructions unless 'it is clear that the jury instructions constituted prejudicial error.' " *State v. Jones*, 2015-Ohio-5029, ¶ 12 (10th Dist.), quoting *State v. Campbell*, 2010-Ohio-1940, ¶ 13 (12th Dist.). *See also State v. Carter*, 2024-Ohio-444, ¶ 15 (10th Dist.). This Court has stated that "[a]n error is prejudicial if there is a reasonable probability that it affected the outcome of the judicial proceedings." *State v. Taylor*, 2017-Ohio-4395, ¶ 16 (4th Dist.), citing *State v. Fisher*, 2003-Ohio-2761, ¶ 7. Further, as explained in *Jones*:

> An appellate court's duty is to review the instructions as a whole, and, if taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at

trial, reversible error will not be found merely on the possibility
that the jury may have been misled.

*Jones, supra,* at ¶ 12, citing *State v. Shepard*, 2007-Ohio-5405, ¶ 7 (10th Dist.).

Thus, a trial court's abuse of discretion must result in prejudicial error before this

Court may find reversible error in connection with the provision of jury

instructions.

Legal Analysis

{¶17} The essential question in this case is whether the defendant, who was

charged with crimes that involve mental states of knowingly and recklessly, as

opposed to purposely, was entitled to an accident instruction when his defense

theory at trial was that his granddaughter's death was a tragic accident. At issue on

appeal are the counts of the indictment charging appellant with involuntary

manslaughter based upon a predicate offense of corrupting another with drugs and

another count of involuntary manslaughter based upon a predicate offense of

endangering children. The elements of these offenses will be fully set forth below

under our analysis of appellant's fourth assignment of error. Suffice it to say at

this juncture, all parties agree that involuntary manslaughter founded upon

corrupting another with drugs contains a mental state of knowingly, while

involuntary manslaughter founded upon endangering children contains a mental

state of recklessly. Notably, although the trial court refused to provide an accident

instruction to the jury, appellant's counsel was permitted to argue that the child's

death was an accident. The word accident was referenced several times by the defense, despite the trial court's admonitions to counsel outside the hearing of the jury.

{¶18} R.C. 2901.22(B) defines knowingly as follows:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(C) defines recklessly as follows:

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶19} By contrast and for purposes of understanding, although appellant was not charged with any crimes containing a mental state of purposely, we note that R.C. 2901.22(A) defines purposely as follows:

A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of

what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

This Court stated in *State v. Chambers*, 2011-Ohio-4352, ¶ 35 (4th Dist.) that "[t]o act 'knowingly' is not to act 'purposely,' or with a specific intent to do the prohibited act."

{¶20} Appellant requested that the jury be instructed on accident, consistent with his defense theory.  The Ohio Jury Instructions contain a model instruction for accident as follows:

> 1.  The defendant denies any purpose to (describe).  He denies that he committed an unlawful act and says that the result was accidental.
>
> 2.   DEFINED.   An accidental result is one that occurs unintentionally and without any design or purpose to bring it about.  An accident is a mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act.
>
> 3.  FORSEEABILITY.   OJI-CR 417.25
>
> 4. CONCLUSION ON ACCIDENT.  If after considering all the evidence, including that on the subject of accident, you are not convinced beyond a reasonable doubt that the defendant had a purpose to (describe), you must return a verdict of not guilty.

{¶21} Courts have noted that accident is not an affirmative defense and is instead a factual defense.  (Emphasis added).  *See State v. Jones*, 2015-Ohio-5029, ¶ 17 (12th Dist.) ("Accident is not an affirmative defense.  Rather, 'it is a factual defense that denies that the accused acted with the degree of culpability required or

mens rea required for the offense, *when that involves purposeful conduct*.' "),

quoting *In re F.D.*, 2015-Ohio-2405, ¶ 32 (8th Dist.). As this Court explained in

*Chambers, supra*:

> When a defendant raises an accident defense, " 'the defendant denies any intent * * *. He denies that he committed an unlawful act and says that the result is accidental.' " *State v. Poole* (1973), 33 Ohio St.2d 18, 20, 294 N.E.2d 888, quoting 4 Ohio Jury Instructions (1970) 177, Section 411.01. The defense of accident is "tantamount to a denial that an unlawful act was committed; it is not a justification for the defendant's admitted conduct. * * * Accident is an argument that supports a conclusion that the state has failed to prove the intent element of the crime beyond a reasonable doubt." *State v. Atterberry* (1997), 119 Ohio App.3d 443, 447.

> An accident is defined as an unfortunate event occurring casually or by chance. *State v. Brady* (1988), 48 Ohio App.3d 41, 42, 548 N.E.2d 278. Accident is defined as a "mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act." 4 Ohio Jury Instructions 75, Section 411.01(2). Moreover, "[a]n accidental result is one that occurs unintentionally and without any design or purpose to bring it about." *Id.*

*Chambers* at ¶ 44-45.

We further noted in *Chambers* that "[i]n general, a trial court errs by failing to

provide a jury instruction on the accident defense when the facts of a case warrant

such an instruction." *Id.* at ¶ 46, citing *State v. Smiley*, 2010-Ohio-4349, ¶ 16 (8th

Dist.).

{¶22} Here, the trial court refused to give the jury the requested instruction reasoning, in part, that section 421.01 of the Ohio Jury Instructions begins with the phrase "the defendant denies any purpose to committing the offense," and noting that "purpose is not an element of any of the involuntary manslaughter or the endangering or the corrupting another with drugs, it's knowledge." The trial court reasoned as follows:

> Also, in item two of that finds an accident is a mere physical happening or event out of the usual order of things. I believe that the accident is not the correct instruction here, I believe that it's mistake of fact. In fact, the defendant even testified to that he mistakenly believed that what he was giving was cough syrup. And so, 417.50 would apply, it applies in a case where purpose or knowledge is an element and knowledge is an element of count one. Well, count three and count one, because count one the definition of the mental state is knowing because that the follows the predicate offense.

{¶23} The trial court further reasoned as follows regarding the charges with the mental state of recklessly:

> And so, I believe that, I'll give you the night to find some case law that convinces me that it should apply to count two. But that is recklessness and recklessness by definition lacks purpose or knowledge, it talks about heedless indifference to the consequence and disregard of a known risk and so forth. And so, I don't believe that it would apply to the recklessness count two and four. I believe mistake only applies to count one and three.
>
> * * *
>
> The other thing is this, you keep talking about the fact that the death was accidental, well, the death was purposeful. Clearly, if it was purposeful he would have been charged with

murder. He is not, so it's even improper to discuss purposeful, it's not purposeful. So under the law the act of knowing is whether, and again it was an accident, he gave her the substance, that is not an accident, that was a knowing or reckless act if it occurred. He admitted that it occurred. So the question is whether he did it knowingly or recklessly. And so therefore the issue is knowledge or recklessness. So the mistake of fact can go to the issue of knowledge in count one and three. But mistake of fact is not applicable to restlessness [sic] because of the definition of recklessness, in the Court's opinion.

{¶24} Importantly, the Court further stated as follows, after noting that it had done its own research and could not find any case law on the matter:

And assuming I don't give accident there will be no mention of the word accident in the case from this point forward. Because again, the issue is not accident it's whether causation and proximate result were proven under the law. And there is no quote "accidental" defense to the law. The definition in the law, accident is a question of fact. And again, since there is no purpose here alleged and there is no dispute that he knowingly and or recklessly administered this substance which turned out to be morphine, clearly that was not an accident, mistake of fact, if the fact and the testimony is to be believed. And that is a question for the jury.

{¶25} On appeal, appellant contends the trial court committed reversible error in refusing to give an accident instruction on counts one through four, which include mental states of knowingly and recklessly. In support of his argument, appellant cites several cases from other districts, primarily the Eleventh District Court of Appeals, that have held that accident instructions were proper for charges involving such mental states. *See State v. O'Brien*, 2013-Ohio-13 (11th Dist.) (holding that the trial court improperly refused to provide an accident instruction

related to a charge of aggravated vehicular homicide, which includes a mental state of knowingly, but declining to find plain error occurred); *State v. Howell*, 137 Ohio App.3d 804 (11th Dist. 2000) (in a case involving a charge of cruelty to animals, which included a mental state of recklessly, the appellate court found the trial court's refusal to provide an accident instruction constituted prejudicial error requiring reversal, despite the fact that the trial court permitted the defendant to argue an accident theory to the jury); *State v. LaBarre*, 1991 WL 100394 (11th Dist. June 3, 1991) (in a case involving both murder and involuntary manslaughter charges, the court found that "[a]ccident negates both the mental states of knowingly and purposely"), citing *State v. Brady*, 48 Ohio App.3d 41 (11th Dist. 1988) (in a case involving a charge of felonious assault, which included a mental state of knowingly, it was held that the trial court erred in refusing to instruct the jury on accident, with the court rejecting an argument that the trial court's general instruction on the definition of the term knowingly sufficiently embraced the substance of accident).

{¶26} However, although appellant argued for application of these cases below, none of these cases were binding upon the trial court in determining this issue. The trial court considered appellant's arguments and soundly rejected them in favor of its own reasoning as set forth above, which is supported by case law from other districts. In *O'Brien, supra*, a case relied upon by appellant, the

Eleventh District Court of Appeals acknowledged that "some Ohio appellate courts have only referred to the mens rea of 'purposely' in describing how the 'accident' doctrine can be used as a means of negating the mens rea element of a crime." *O'Brien* at ¶ 63.

{¶27} For example, in *State v. Jones, supra*, the trial court refused to give the approved Ohio Jury Instruction on accident but instead provided the Black's Law Dictionary definition of accident to the jury, based upon its reasoning that the OJI definition of accident referred to purpose and intent. *Jones* at ¶ 9-10. The Tenth District Court of Appeals found no error, reasoning that because the mental states at issue in the case were knowingly and recklessly, "the OJI definition of 'accident' was not appropriate in a case such as here where 'purpose' is not the culpable mental state." *Id.* at ¶ 19. In affirming the judgment of the trial court, the court reasoned as follows:

> The OJI definition would have been confusing in that the jury could have found that the appellant "recklessly" caused the victim's death yet acquitted appellant of reckless homicide because he did not act with "design, intent or purpose." Given the facts of the case, we find the trial court did not abuse its discretion in declining to provide the jury with the accident instruction requested by appellant or set forth in the OJI, both of which refer to intent, design, and purpose.

*Jones* at ¶ 19.

{¶28} Similarly, in *State v. Hoff*, a case involving a charge of endangering children which includes a mental state of recklessly, the appellate court refused to

find counsel was ineffective for failing to request an accident instruction. *State v. Hoff*, 2024-Ohio-5837, ¶ 63 (2d Dist.). In *Hoff*, a child sustained a skull fracture while in Hoff's care. *Id.* at ¶ 56. The appellate court noted that endangering children charges are very fact specific and that "Hoff admitted putting the child into the crib 'too hard,' while lacking sleep, in a dark room, and while caring for two babies alone at the same time." *Id.* Although Hoff challenged the prosecutor's remarks which argued "that the victim's injury could be both an accident and reckless" in response to Hoff's assertion that an accident defense absolved him of any crime, the appellate court found no error below. *Id.* at ¶ 52, 56. In reaching its decision, the court reasoned as follows:

> Because the definition of accident negates the mens rea of intentional conduct (and not reckless conduct), we cannot conclude that defense counsel was ineffective for failing to request such an instruction. Further, had such an instruction been requested and provided, we conclude that it would not have altered the outcome of the trial.

*Id.* at ¶ 56.

{¶29} Next, *State v. Chambers*, 2011-Ohio-4352, ¶ 8 (4th Dist.), involved the death of a child that allegedly fell down the stairs while in Chambers' care, leading Chambers to shake the child and hit her head on the floor in an effort to wake her up. Chambers was charged with felony murder based upon a predicate offense of felonious assault and felony murder based upon a predicate offense of endangering children, which respectively included mental states of knowingly and

recklessly. *Id.* at ¶ 28-30. Chambers argued that the trial court committed plain error by failing to give the jury an accident instruction. *Id.* at ¶ 41.

{¶30} As noted above, in addressing Chambers' manifest weight of the evidence argument, we reasoned that "[t]o act 'knowingly' is not to act 'purposely,' or with a specific intent to do the prohibited act." *Id.* at ¶ 35. Later, when addressing his argument that the trial court plainly erred in failing to provide an accident instruction, we reasoned that "[b]y definition, the term 'knowingly' means that the defendant's conduct was not an accident." *Id.* at ¶ 48. We ultimately found no plain error on the part of the trial court, finding that because the trial court properly instructed the jury on the definition of knowingly, and because a mental state of knowingly is inconsistent with an accident theory, "[b]y finding that appellant acted knowingly, the jury necessarily concluded that he was aware of his conduct and thus, that his conduct could not have simply been accidental." *Id.* at ¶ 48. We further reasoned as follows:

> Thus, the court's knowingly instruction adequately conveyed to the jury the requisite mental state, and had the jury believed appellant's claimed accident theory at trial, it could not have found that he acted knowingly. We therefore see no danger that the jury wrongly convicted appellant due to the absence of an accident instruction.

*Id.*

{¶31} Although we reviewed the trial court's actions in *Chambers* for plain error rather than for an abuse of discretion, we find the reasoning still applies.

Importantly, in order to find plain error in *Chambers*, we had to find that the error changed the outcome of the trial. Here, although the error was preserved for appeal, under the controlling standard, in order to find reversible error, we must first find prejudicial error occurred, meaning that the outcome of the trial was affected. We cannot so find here.

{¶32} Moreover, we do not believe that the facts adduced at trial support an accident instruction and we find no abuse of discretion on the part of the trial court in instead providing an instruction on mistake of fact.[1] Appellant testified at trial that he meant to give the child medication, although he was tired and it was late at night in poorly lit conditions. He further testified that he intended to give the child prescription cough medication, only to realize after her death that he had mistakenly given her liquid morphine. The Tenth District Court of Appeals has noted that "[w]ith respect to the required mental state of 'knowingly,' mistake of fact is an affirmative defense." *State v. Thompson*, 2017-Ohio-8375, ¶ 20 (10th Dist.). Furthermore, appellant admitted during cross-examination that such action, even as he believed it at the time, was reckless as the medication had not been

---

[1] Appellant includes two sentences at the end of his first assignment of error contending that the mistake of fact instruction provided by the trial court was "confusing and vague at best." He also includes a section on mistake of fact in his reply brief. App.R. 16(A)(7) states: "The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) states: "The court may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App. R. 16(A)." Therefore, we have discretion to disregard any assignments of error which are not separately argued. *In re F.T.*, 2023-Ohio-191, ¶ 34 (4th Dist.).

prescribed to his ten-year old granddaughter and he did not check the dose before administering it.

{¶33} Applying the above case law, albeit nonbinding, as well as this Court's prior reasoning in *State v. Chambers*, we cannot conclude that the trial court erred in refusing to provide the requested accident instruction based upon the record before us. The charges at issue involved mental states of knowingly and recklessly, neither of which required purposeful action on the part of appellant. The plain language of the OJI accident instruction appears to apply to purposeful conduct, which appellant was not charged with and thus, we cannot conclude it would have mitigated against the jury's finding of guilt. As such, and because appellant does not otherwise argue that the trial court's charge to the jury regarding the definitions of knowingly and recklessly were erroneous, we find the trial court's refusal to instruct the jury on accident did not result in prejudicial error that constituted an abuse of discretion requiring reversal. Accordingly, appellant's first assignment of error lacks merit and is overruled.

## ASSIGNMENT OF ERROR II

{¶34} In his second assignment of error, appellant contends that the trial court failed to provide all the mandatory Reagan Tokes Law notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing. More specifically, appellant contends that the trial court failed to include the advisements contained in R.C.

2929.19(B)(2)(c)(iii) through (v). The State contends, however, that the trial court provided all of the required notifications at the sentencing hearing and also included them in the sentencing entry.

Standard of Review

{¶35} Appellate courts review felony sentences under the standard outlined in R.C. 2953.08(G)(2). *State v. Estep*, 2024-Ohio-58, ¶ 56 (4th Dist.), citing *State v. Long*, 2021-Ohio-2672 (4th Dist.). R.C. 2953.08(G)(2) provides as follows:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶36} We noted in both *Estep* and *Long* that appellate courts may vacate or modify a felony sentence if the court clearly and convincingly finds that the record does not support the trial court's findings. *Estep* at ¶ 56, citing *Long* at ¶ 26, in turn citing *State v. Layne*, 2021-Ohio-255, ¶ 6 (4th Dist.). " 'This is an extremely deferential standard of review.' " *Layne* at ¶ 8, quoting *State v. Pierce*, 2018-Ohio-4458, ¶ 8 (4th Dist.). Clear and convincing evidence is proof that is more than a

"mere preponderance of the evidence" but not of such certainty as "beyond a reasonable doubt," and produces in the mind a "firm belief or conviction" as to the facts sought to be established. *State v. Conant*, *supra*, at ¶ 42; *see also State v. Hughes*, 2021-Ohio-3127, ¶ 37-38 (4th Dist.).

## Legal Analysis

{¶37} As set forth above, appellant asserts that the trial court erred when it failed to provide the mandatory Reagan Tokes Law notifications set forth in R.C. 2929.19(B)(2)(c)(iii) through (v) at the sentencing hearing. R.C. 2929.19(B)(2)(c) provides as follows:

> (2) Subject to division (B)(3) of this section, if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:
>
> * * *
>
> (c) If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:
>
> (i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;
>
> (ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's

restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

{¶38} In *State v. Estep, supra*, we observed our prior holding that " 'if a trial court fails to provide notice of all R.C. 2929.19(B)(2)(c) notifications at a sentencing hearing, the sentence is contrary to law.' " *Estep* at ¶ 55, quoting *State v. Bentley*, 2022-Ohio-1914, ¶ 10 (4th Dist.). *See also State v. Jackson*, 2022-Ohio-3449, ¶ 20 (1st Dist.) (trial court must advise defendant of all five notifications outlined in R.C. 2929.19(B)(2)(c)); *State v. Whitehead*, 2021-Ohio-847, ¶ 43-36 (8th Dist.); *State v. Gatewood*, 2022-Ohio-2513, ¶ 1 (2d Dist.); *State v. Hodgkin*, 2021-Ohio-1353, ¶ 24 (12th Dist.).

{¶39} We further explained in *Estep* as follows:

These notifications also include the pertinent features of the Reagan Tokes Law. Because the Reagan Tokes Law, when applicable, allows the Ohio Department of Rehabilitation and Correction to extend a defendant's sentence beyond the minimum term upon satisfaction of statutory criteria, trial courts must abide by R.C. 2929.19(B)(2)(c) and notify the defendant of the five notifications as it relates to their indefinite prison term. *State v. Greene*, 1st Dist. Hamilton No. C-220160, 2022-Ohio-4536, 2022 WL 17727610, ¶ 11.

*Estep* at ¶ 57. *See also State v. Clark*, 2024-Ohio-4930, ¶ 13 (4th Dist.).

{¶40} At the sentencing hearing in the case sub judice, the trial court imposed a definite, minimum prison term of 7 years and a maximum prison term of 10.5 years on count one pursuant to the Reagan Tokes Law. Counts two, three, and four were merged with count one for purposes of sentencing. Appellant was additionally sentenced to an 18-month prison term on count five, to be served consecutively to the sentence imposed in count one, for a total possible prison sentence of 12 years. When imposing the sentence, the following exchange took place on the record:

> THE COURT:      * * * All right, is there anything further?
>
> MS. COLLINS:    Yes, Your Honor, there are additional Reagan Tokes notifications that have to be done, and I have new ones on a form if the Court pleases.
>
> THE COURT:      Okay. Yeah, this is just something that has been added, this is the first case we have had since that was added. Regarding the extension of the ten and a half, up to ten and a half years on count one there is a rebuttal of

presumption [sic] that you will be released at the end of the seven years, or any early release date that you may get because of earned credit for things that you do while you're in custody. However the Department of Rehabilitation and Corrections may rebut that presumption. They have to have a hearing and make certain determinations in order to determine whether in their judgment your sentence should be increased due to what your rehabilitation has been while in custody and any future threat to society, any restrictive housing as a sanction while you're in custody. And then they make those specific determinations regarding that. And all that has to occur prior to the expiration of the seven years. Although again, you do have an additional sentence of 18 months on count five, which will be consecutive. So, that means your minimum term is going to be eight and a half years potentially. All right. Anything further from counsel?

MS. COLLINS:     No, Your Honor.

{¶41} After reviewing the sentencing transcript, we conclude that although the trial court provided appellant with the notifications set forth in R.C. 2929.19(B)(2)(c)(i) and (ii), appellant is correct in his argument that the trial court failed to provide the required notifications contained in R.C. 2929.19(B)(2)(c)(iii) through (v). Thus, in accordance with the reasoning set forth above, appellant's sentence is contrary to law. This failure on the part of the trial court requires that the judgment be reversed and remanded for a new sentencing hearing at which all of the required R.C. 2929.19(B)(2)(c) notifications be provided to appellant. *See*

*State v. Miller*, 2025-Ohio-1920, ¶ 82 (4th Dist.). Accordingly, appellant's second

assignment of error is sustained.

ASSIGNMENT OF ERROR III

{¶42} In his third assignment of error, appellant contends that the trial court

erred when it imposed consecutive sentences. More specifically, he argues that the

record does not support the imposition of consecutive sentences. The State

responds by arguing that the trial court made the necessary findings required

before imposing consecutive sentences, that the record supports the imposition of

consecutive sentences, and that the trial court had no obligation to state its reasons

in support of its findings.

Standard of Review

{¶43} R.C. 2953.08(A) authorizes a defendant who is convicted of a felony

to appeal as a matter of right the sentence imposed on the defendant on various

grounds, including that the sentence is "contrary to law." R.C. 2953.08(G)(2)

states:

> The court hearing an appeal under division (A), (B), or (C)
> of this section shall review the record, including the findings
> underlying the sentence or modification given by the sentencing
> court.
>
> The appellate court may increase, reduce, or otherwise
> modify a sentence that is appealed under this section or may
> vacate the sentence and remand the matter to the sentencing court
> for resentencing. The appellate court's standard for review is not
> whether the sentencing court abused its discretion. The appellate

court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶44} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Consecutive Sentences

{¶45} R.C. 2929.14(C)(4) states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Legal Analysis

{¶46} Appellant challenges whether the record supports the trial court's findings under R.C. 2929.14(C)(4), as well as the trial court's findings under R.C. 2929.14(C)(4)(b), but after reviewing the entire record, we do not clearly and convincingly find that the record does not support these findings.  Appellant specifically challenges the trial court's "first finding" under R.C. 2929.14(C)(4), arguing that "the record is unclear why consecutive sentences are necessary to protect the public from future crime by Powell."  However, we note that section (C)(4) requires a trial court to find that consecutive service is necessary "to protect the public from future crime *or* to punish the offender."  (Emphasis added).

{¶47} Here, the trial court explicitly referenced the need for deterrence of the public, in general, when discussing the goal of protecting the public from future crime, essentially stating that both appellant and the public need to understand that it is not acceptable to keep prescription medications that should have been properly

disposed of, nor is it acceptable to administer prescription medications to children "willey/nilly." Importantly, the trial court also specifically referenced the need to punish the offender as a separate ground for the imposition of consecutive sentences. Appellant does not argue that the record does not support this finding, which is an alternative ground for the imposition of consecutive sentences.

{¶48} Appellant next challenges the trial court's "third finding" under R.C. 2929.14(C)(b), arguing that "the record does not support the conclusion that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of Powell's conduct." Appellant questions how the harm here "was so great or unusual," and "how this offense was part of a 'course of conduct,' " arguing that appellant's convictions "were based upon a single event – the accidental overmedication of his granddaughter."

{¶49} Contrary to appellant's arguments, the jury found that appellant's convictions were based upon two events: 1) the death of appellant's granddaughter, which occurred as a result of appellant's conduct which corrupted another with drugs and endangered children; and 2) appellant's tampering with evidence as a result of his immediate and ongoing attempt to cover up the child's cause of death by first hiding the bottle of morphine and then disposing of it. By finding appellant guilty of these charges, the jury found that appellant caused her death

both knowingly and recklessly and implicitly rejected appellant's defense theory

that her death was a tragic accident. The trial court stated as follows in imposing

consecutive sentences:

> * * * the evidence shows that you knew you were giving her
> morphine, you just thought it would put her to sleep and she
> would sleep peacefully. But the testimony as I recall from the
> doctor was it was a significant amount of morphine in her system,
> it wasn't just a tiny dose as you claimed you gave her.

{¶50} The court then noted that appellant compounded the harm caused by

the child's death by his "desire to cover [his] own ass by hiding this medicine" and

then "on the day of [his] granddaughter's funeral disposing of it in the trash so it

couldn't be found." The court further cited the fact that appellant continued to lie

about his actions, keeping his children and family "in the dark" about what had

happened for months. The court found that the harm caused from the tampering

with evidence compounded the harm caused by the death of the child, and that

appellant "undertook a rather significant and prolonged attempt to cover up this

crime."

{¶51} In our view, the sentencing transcript demonstrates that the trial court

set forth its reasoning at great length for imposing consecutive sentences, reasons

which we find are supported by the record. As such, we find no merit to

appellant's argument that the record does not support the imposition of consecutive

sentences. Accordingly, appellant's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

{¶52} In his fourth assignment of error, appellant contends that his convictions for involuntary manslaughter, endangering children, and corrupting another with drugs were not supported by sufficient evidence. He challenges the sufficiency of the State's evidence with respect to the mental state of recklessly, which applies to the involuntary manslaughter conviction based upon the predicate offense of endangering children, as well as the sufficiency of the State's evidence with respect to the mental state of knowingly, which applies to the involuntary manslaughter conviction based upon the predicate offense of corrupting another with drugs. The State contends that his convictions for both counts of involuntary manslaughter, endangering children, and corrupting another with drugs were supported by sufficient evidence.

Standard of Review

{¶53} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, syllabus (1997); *State v. Blevins*, 2019-Ohio-2744, ¶ 18 (4th Dist.). When reviewing the sufficiency of the evidence, an appellate court's inquiry focuses primarily on the adequacy of the evidence; that is, whether the evidence, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. *Id*. at syllabus. The standard of review

is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.  *E.g., Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991); *State v. Brock*, 2024-Ohio-1036, ¶ 13 (4th Dist.).

{¶54} Furthermore, under the sufficiency of the evidence standard a reviewing court does not assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Thompkins* at 390.  Therefore, when an appellate court reviews a sufficiency of the evidence claim, the court must construe the evidence in a light most favorable to the prosecution.  *See, e.g., State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993).  A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did.  *State v. Tibbetts*, 92 Ohio St.3d 146, 162; *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶55} "Whether sufficient evidence supports a conviction is a question of law that appellate courts review de novo." *State v. Burchett*, 2025-Ohio-5444, ¶ 9 (4th Dist.), citing *State v. Jackson*, 2018-Ohio-4289, ¶ 10 (4th Dist.).  " 'That limited review does not intrude on the jury's role "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts." ' " *Burchett* at ¶ 9, quoting *Musacchio v. United States*, 577 U.S. 237, 243 (2016), in turn quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Legal Analysis

{¶56} Appellant was convicted of one count of involuntary manslaughter in violation of R.C. 2903.04(A) (count one) based upon the predicate offense of corrupting another with drugs (count three). He was convicted of another count of involuntary manslaughter in violation of R.C. 2903.04(A) (count two) based upon the predicate offense of endangering children (count four). R.C. 2903.04(A) defines the offense of involuntary manslaughter and provides that "[n]o person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04 does not contain a mens rea requirement. However, " 'the predicate offense contains the mens rea element.' " *State v. Wilson*, 2015-Ohio-2016, ¶ 53 (4th Dist.), citing *State v. Fry*, 2010-Ohio-1017, ¶ 43.

{¶57} Corrupting another with drugs is defined in R.C. 2925.02, which provides in pertinent part in section (A)(3) as follows:

> (A) No person shall *knowingly* do any of the following:
>
> * * *
>
> (3) By any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause

serious physical harm to the other person, or cause the other person to become a person with drug dependency[.]

(Emphasis added).

Thus, because the offense of corrupting another with drugs contains a mental state of "knowingly," the mental state for involuntary manslaughter under count one is also "knowingly."

{¶58} Endangering children is defined in R.C. 2919.22 and provides in pertinent part in section (A) as follows:

> (A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or disability of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.

Although a mental state is not specified in the child endangering statute, the Ohio Supreme Court has stated that the appropriate mental state under R.C. 2919.22(B) is reckless. *See State v. Adams*, 62 Ohio St.2d 151, 153 (1980). Thus, because the offense of endangering children contains a mental state of recklessly, the mental state for involuntary manslaughter under count two is also recklessly.

{¶59} Although already set forth above, we again consider the definitions of knowingly and recklessly. R.C. 2901.22(B) defines knowingly as follows:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(C) defines recklessly as follows:

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶60} We first address appellant's argument that the State failed to introduce sufficient evidence to demonstrate that he acted recklessly. Appellant contends that he had an honest belief that he was giving the child cough medicine at the time the medication was administered and that evidence indicating he did so when he was tired and in conditions with poor light indicated negligence at the most. He argues that he thought he had disposed of the morphine that he had kept at his house for his mother and that there was no evidence introduced by the State indicating that he had moved his mother's medication from her house to his house when she entered a nursing home.

{¶61} However, the State introduced evidence and the record confirms that at trial, appellant testified that he believed he was giving the child prescription cough medicine, not morphine or Tylenol (which he initially had reported to law enforcement).  Importantly, the State points out that appellant conceded during his testimony that even if he had believed at the time that he was administering prescription cough medicine, such action was reckless because the medication was not prescribed to the child and he did not check the dose before giving it to her. We find that the evidence introduced by the State, if believed, supported appellant's conviction for involuntary manslaughter based upon the predicate offense of endangering children.  This conclusion is further supported by appellant's own concession that his actions were reckless.

{¶62} We next address appellant's argument that the State failed to introduce sufficient evidence to demonstrate that he acted knowingly.  Appellant again argues that at the time he administered the medication to the child, that he did not know it was morphine that he was administering, but rather he believed he was giving her something to help with her cough.  Appellant contends that his "fatal mistake" was thinking he had disposed of the morphine that was in his cabinet.

{¶63} However, the State introduced evidence that by appellant's own admission, he gave her prescription medication that was not prescribed to her and

he did so without checking the label to confirm the correct dose. The State points out that when first questioned, appellant told law enforcement that he gave the child Tylenol, even showing them the bottle with a dose cup on top that was wet. It was the State's theory at trial that this demonstrated that appellant took the dose cup off the Tylenol bottle, used it to administer morphine (or at best prescription cough medicine that was not meant for the child), and then rinsed the cup out and placed it back on the Tylenol bottle, and at some point he hid the morphine bottle in the garage and then later disposed of it.

{¶64} Although appellant argues that his "fatal mistake" was not disposing of the morphine he kept in his medicine cabinet, the State introduced an OARRS report demonstrating that appellant's mother only had one prescription for morphine, arguing that the prescription would have been kept at her own house and that she did not have duplicate prescriptions. The inference then was that appellant did, in fact, remove the morphine from his mother's house and bring it to his own house when his mother was placed in a nursing home, contrary to appellant's claims. Most importantly, the State introduced evidence at trial that when appellant was questioned by law enforcement a third time, upon being confronted with information that the child's cause of death was morphine intoxication, appellant responded that he only "gave her a little bit." The law enforcement officer testified that he understood that statement as an admission that appellant

had given the child morphine but had only given her a little bit. Although appellant testified at trial and claimed that he meant that he had only given her a little bit of prescription cough syrup, the jury heard the testimony from both parties and obviously resolved this conflict in favor of the State.

{¶65} Therefore, we conclude that the State introduced sufficient evidence that when viewed in favor of the State and if believed, supported appellant's convictions for involuntary manslaughter based upon the predicate offenses of corrupting another with drugs and endangering and, in particular, that appellant's actions were done knowingly. Based upon the foregoing, we find no merit to the arguments raised under appellant's fourth assignment of error and as such, it is overruled.

{¶66} In summary, we have found no merit to appellant's first, third, or fourth assignments of error. Therefore, his convictions for two counts of voluntary manslaughter, endangering children, corrupting another with drugs, and tampering with evidence are affirmed. However, because we have concluded that the trial court erred in the imposition of appellant's sentences by failing to provide all of the mandatory Reagan Tokes notifications contained in R.C. 2929.19(B)(2)(c), the judgment of the trial court is reversed and this matter must be remanded to the trial

court for resentencing.


**JUDGMENT AFFIRMED IN PART, VACATED IN PART, AND CAUSE**

**REMANDED.**

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED IN PART, VACATED IN PART, CAUSE REMANDED and costs be assessed to appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of appellate Procedure.

Abele, J. and Wilkin, J. concur in Judgment and Opinion.


For the Court,


_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**